UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 12 CR 829 |
| | ) | |
| HSIEN TAI TSAI, | ) | |
| also known as "Hsein Tai Tsai" | ) | **FILED** |
| also known as "Alex Tsai" | ) | |
| | ) | JUN 1 7 2013 |
| and | ) | June 17 2013 |
| | ) | JUDGE CHARLES R. NORGLE |
| YUEH-HSUN TSAI, | ) | U.S. District Court Judge |
| also known as "Gary Tsai" | ) | |

## AFFIDAVIT OF ASSISTANT U.S. ATTORNEY IN SUPPORT OF EXTRADITION

I, Patrick C. Pope, being duly sworn, depose and state as follows:

1. I am a citizen of the United States. Since 1997, I have been an attorney licensed to practice law by the State of California. From 2002 to the present, I have been employed by the United States Attorney's Office for the Northern District of Illinois as an Assistant United States Attorney. My duties include the investigation and prosecution of persons charged with violations of the criminal laws of the United States. Based on my training and experience, I am familiar with the criminal laws and procedures of the United States.

2. This affidavit is submitted in support of a request by the United States for the extradition of Hsien Tai Tsai, also known as "Hsein Tai Tsai" and "Alex Tsai" (hereinafter "ALEX TSAI"). ALEX TSAI was provisionally arrested in Estonia for purposes of extradition to the United States on 1 May 2013.

3. In the course of my duties as an Assistant United States Attorney, I have become familiar with the evidence and the charges against ALEX TSAI. This affidavit does not detail all

of the evidence against ALEX TSAI that is known to me, but only the evidence necessary to establish a basis for the extradition request.

## SUMMARY OF THE APPLICABLE LAW AND CHARGES

4. On 6 June 2013, a federal grand jury sitting in the Northern District of Illinois, issued Indictment 12 CR 789 (the "Indictment") against ALEX TSAI. An indictment is a formal charging document that alleges violations of the criminal laws of the United States. A copy of the Indictment, certified to be true and accurate by the Clerk of the Court for the United States District Court for the Northern District of Illinois, is attached as Exhibit A.

5. Prior to being indicted for the charges for which extradition is now sought, ALEX TSAI was charged with some of the same violations for which he was indicted, in a prior charging document called a complaint, which was issued on 26 October 2012. On the basis of that complaint, a warrant for the arrest of ALEX TSAI was issued on the same day. ALEX TSAI has never appeared in the United States to answer the charges in this case. As such, the initial arrest warrant entered in connection with the complaint filed on 26 October 2012, remains valid. A copy of the arrest warrant, certified to be true and accurate by the Clerk of the Court, is attached as Exhibit B.

6. The Indictment against ALEX TSAI contains ten criminal charges.

7. Count One of the Indictment charges ALEX TSAI with conspiracy to defraud the United States Department of Treasury and the United States government by interfering with and obstructing a lawful government function, that is, the enforcement of laws and regulations prohibiting the proliferation of weapons of mass destruction, in violation of Title 18, United States Code, Section 371.

2

8.    Under United States law, a conspiracy is simply an agreement to commit one or more "substantive" criminal offenses, referred to as the purpose or object of the conspiracy. The crime of conspiracy is an independent offense, separate and distinct from the commission of any substantive offense.

9.    The objects of the conspiracy charged in Count One are Title 50, United States Code, Section 1705, and Title 31, Code of Federal Regulations, Sections 544.201 and 544.205. Those laws prohibit transactions or dealings by any U.S. person or within the United States with individuals and entities who have been designated as proliferators of weapons of mass destruction by the United States government. The prohibited transactions include:

(a)    The making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person or entity who has been designated a proliferator of weapons of mass destruction, except as authorized by, among other things, licenses issued by Office of Foreign Assets Control (hereinafter "OFAC"), Title 31, Code of Federal Regulations, Sections 544.201;

(b)    The receipt of any contribution or provision of funds, goods, or services from any person or entity who has been designated a proliferator of weapons of mass destruction, except as authorized by, among other things, licenses issued by OFAC, Title 31, Code of Federal Regulations, Sections 544.201; and

(c)    any transaction by a United States person or within the United States that evades or avoids, has the purpose of evading or avoiding, or attempts to violation any of the prohibitions set forth above, Title 31, Code of Federal Regulations, Sections 544.205.

10.    The maximum penalty that may be imposed for a conspiracy to defraud the United

3

States, as charged in Count One of the Indictment, is a term of imprisonment up to 5 years.

11.     Count Two of the Indictment charges ALEX TSAI with a conspiracy to: (a) evade and avoid the prohibitions and restrictions imposed by OFAC on ALEX TSAI and Trans Merits as proliferators of weapons of mass destruction; (b) make a contribution and provision of funds, goods, and services to and for the benefit of ALEX TSAI and Trans Merits after they were designated proliferators of weapons of mass destruction by OFAC; and (c) receive a contribution and provision of funds, goods, and services from ALEX TSAI and Trans Merits after they were designated proliferators of weapons of mass destruction by OFAC, in violation of 50 U.S.C. §§ 1705(a) and (c), and Title 31, Code of Federal Regulations, Parts 544.201 and 544.205.

12.     Count Three of the Indictment charges ALEX TSAI with evading and avoiding the prohibitions and restrictions imposed by OFAC on Alex Tsai and Trans Merits, as proliferators of weapons of mass destruction, by exporting and causing the export of a Bryant Center Hole Grinder from the United States to Taiwan in September 2009, in violation of 50 U.S.C. §§ 1705(a) and (c), and Title 31, Code of Federal Regulations, Parts 544.201 and 544.205.

13.     Count Four of the Indictment charges ALEX TSAI with making and causing to be made a contribution and provision of funds, goods, and services, specifically a Bryant Center Hole Grinder, to and for the benefit of ALEX TSAI and Trans Merits after they were designated proliferators of weapons of mass destruction by OFAC, in violation of 50 U.S.C. §§ 1705(a) and (c), Title 31, Code of Federal Regulations, Parts 544.201 and 544.205, and 18 U.S.C. § 2.

14.     Title 18, United States Code, Section 2 is not a separate substantive offense. Rather it is an additional basis of culpability for the other crimes charged. Specifically, Section 2

provides that whoever aids, abets, counsels, commands, induces, or procures the commission of an offense against the United States is punishable as a principal.

15.　Counts Five and Seven of the Indictment charge ALEX TSAI with evading and avoiding the prohibitions and restrictions imposed by OFAC on ALEX TSAI, as a proliferator of weapons of mass destruction, by causing the wire transfer of money from a bank account in Taiwan to a bank account in the United States, in October 2009 and February 2010, respectively, in violation of 50 U.S.C. §§ 1705(a) and (c), and Title 31, Code of Federal Regulations, Parts 544.201 and 544.205.

16.　Counts Six and Eight of the Indictment charge ALEX TSAI receiving and causing to be received a contribution and provision of funds, goods, and services, specifically, the wire transfer of monies from a bank account in Taiwan to a bank account in the United States in October 2009 and February 2010, after ALEX TSAI was designated a proliferator of weapons of mass destruction by OFAC, in violation of 50 U.S.C. §§ 1705(a) and (c), Title 31, Code of Federal Regulations, Parts 544.201 and 544.205, and 18 U.S.C. § 2.

17.　The maximum penalty that may be imposed for a conspiracy to evade and avoid the prohibitions and restrictions imposed by OFAC on ALEX TSAI and Trans Merits, as proliferators of weapons of mass destruction, as charged in Count Two of the Indictment, is a term of imprisonment up to 20 years. The same penalties apply with respect to the substantive violations charged in Counts Three through Eight of the Indictment.

18.　Count Nine of the Indictment charges ALEX TSAI with conspiring to commit an offense against the United States in violation of Title 18, United States Code, Section 1956, specifically, to transmit and transfer funds, namely, approximately $7200, from a place outside

5

the United States, namely Taiwan, to a place in the United States, with the intent to promote the carrying on of specified unlawful activity, namely, the offenses charged in Counts Three and Four of the Indictment; all in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and (h).

19.     Count Ten of the Indictment charges ALEX TSAI with transmitting and transferring funds, namely, approximately $7200, from a place outside the United States, namely Taiwan, to a place in the United States, with the intent to promote the carrying on of specified unlawful activity, namely, the offenses charged in Counts Three and Four of the Indictment, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

20.     The maximum penalty that may be imposed for a conspiracy to commit money laundering, as charged in Count Nine of the Indictment, is a term of imprisonment up to 20 years. The same penalties apply with respect to the substantive money laundering violation charged in Count Ten of the Indictment.

21.     The Indictment includes forfeiture allegations against ALEX TSAI, pursuant to Title 18, United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461. The criminal forfeiture allegations provide notice to ALEX TSAI that if he is convicted, the United States will seek to seize certain properties that were derived from or traceable to the crimes or used to commit the crimes. However, the forfeiture allegations do not expose ALEX TSAI to additional penalties.

22.     Each of the statutes charged in the Indictment is currently in effect, as a duly-enacted law of the United States, and was also in effect both when the charged offenses were committed and when the Indictment issued. A violation of each of the statutes cited in

Counts One through Ten of the Indictment is a felony under United States law. The relevant portions of these statutes are attached as Exhibit C.

23.    The prosecution of ALEX TSAI is not barred by the statute of limitations. In particular, there is a five-year statute of limitations for each of the offenses charged in the Indictment, pursuant to Title 18, United States Code, Section 3282. All the crimes charged in Counts One through Ten of the Indictment are alleged to have continued through at least September 2009, and the Indictment was filed less than five years later, on 6 June 2013. The relevant portions of the statute of limitations are also included as part of Exhibit C.

## SUMMARY OF THE CASE

24.    On 16 January 2009, the United States government banned United States citizens, United States permanent resident aliens, United States companies, and persons in the United States from engaging in business with ALEX TSAI, Trans Merits, or Global Interface. The ban was based on the fact that the United States government designated ALEX TSAI, Trans Merits, and Global Interface proliferators of weapons of mass destruction. The ban prohibits ALEX TSAI, Trans Merits, and Global Interface, or anyone acting on their behalf, from among other things: (a) exporting goods from the United States without first obtaining a license from the United States Department of Treasury, Office of Foreign Assets Control (hereinafter "OFAC"), (b) importing goods into the United States without first obtaining a license from OFAC; and (c) transmitting money to the United States, or through a financial institution based in the United States, without first obtaining a licence from OFAC.

25.    The United States' investigation has revealed that ALEX TSAI and Trans Merits never applied for any such licenses. Instead ALEX TSAI conspired with Gary Tsai and others to

7

hide his involvement and/or Trans Merits' involvement in export transactions, import transactions, and financial transactions. By concealing ALEX TSAI's and Trans Merits' involvement in those transactions, ALEX TSAI, Gary Tsai, and others defrauded the U.S. government and deprived the U.S. government of its ability to regulate commerce and implement foreign policy.

26.     ALEX TSAI's conduct and the evidence against ALEX TSAI are described more fully in the affidavit of FBI Special Agent Joseph Hugdaul, which I have reviewed and which is attached as Exhibit D.

27.     ALEX TSAI has not been tried or convicted of the offenses charged in Counts One through Seven of the Indictment, nor has he been sentenced to serve any term of imprisonment in connection with those charges.

## DESCRIPTION OF THE ACCUSED

28.     ALEX TSAI, a male, is a resident of Taiwan. His Taiwanese passport number is 301335314 and/or 131134049. ALEX TSAI's date of birth is 8 August 1945. His is believed to stand 5 feet, 6 inches (1.67 meters) tall and is approximately 175 pounds (80 kilograms). ALEX TSAI has black hair and brown eyes. A photograph of ALEX TSAI is attached as Exhibit E.

## CONCLUSION

29.     If Estonian authorities or an Estonian court believe that additional information is needed in support of this extradition request after the submission of this request, the United States (through the Department of Justice Office of International Affairs) hereby requests, pursuant to Article 8 of the 2006 U.S.-Estonia Extradition Treaty, that it be given notification of any perceived deficiencies immediately, and that the United States be given an opportunity to

supplement its request for extradition within a reasonable time period.

     30.     This affidavit was sworn to before a District Judge of the United States District Court for the Northern District of Illinois, who is a person duly empowered to administer an oath for this purpose.

PATRICK C. POPE
Assistant United States Attorney
Northern District of Illinois

Signed and sworn to before me
this 17 day of June 2013

CHARLES NORGLE
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF ILLINOIS

## LIST OF EXHIBITS

| | |
|---|---|
| Exhibit A | Certified copy of Indictment 12 Cr. 829 |
| Exhibit B | Certified copy of arrest warrant for Hsien Tai Tsai, also known as "Hsein Tai Tsai" and "Alex Tsai" |
| Exhibit C | Relevant portions of statutes |
| Exhibit D | Affidavit of FBI Special Agent Joseph Hugdahl |
| Exhibit E | Photograph of Hsien Tai Tsai, also known as "Hsein Tai Tsai" and "Alex Tsai" |

# Exhibit A

CERTIFIED COPY (Rev. 1/2012)

# United States District Court
### Northern District of Illinois
### Eastern Division

I, Thomas G. Bruton, Clerk of the United States District Court for the Northern District of Illinois, do hereby attest and certify that the annexed document(s) is (are) a full, true, and correct copy of the original(s) on file in my office and in my legal custody.

**IN TESTIMONY WHEREOF:**

I have hereunto subscribed my name and affixed the seal of the foresaid court at Chicago, Illinois, on **JUN 1 2 2013**

THOMAS G. BRUTON, CLERK

By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE NORGLE

MAGISTRATE JUDGE
GERALDINE SOAT BROWN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 12 CR 829 |
| | ) | |
| v. | ) | Violations: 18 U.S.C. §§ 371, 1956(a)(2)(A), |
| | ) | & 1956(h); 50 U.S.C. §§ 1705(a) & 1705(c); |
| HSIEN TAI TSAI, | ) | and 31 C.F.R. §§ 544.201 & 544.205 |
| also known as "Hsein Tai Tsai" | ) | |
| also known as "Alex Tsai" | ) | |
| | ) | |
| and | ) | |
| | ) | |
| YUEH-HSUN TSAI, | ) | |
| also known as "Gary Tsai" | ) | |

FILED

JUN - 6 2013

THOMAS G BRUTON
CLERK, U S DISTRICT COURT

**COUNT ONE**

The SPECIAL SEPTEMBER 2012 GRAND JURY charges:

1.    At times material to this Indictment:

a.    HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai" (hereafter "ALEX TSAI"), was a resident of Taiwan; ALEX TSAI conducted business in the United States and Taiwan, among other countries, buying, selling, and procuring machine tools and other products through Taiwan-based businesses known as Trans Merits Co., Ltd. ("Trans Merits"), Global Interface Company, Inc. ("Global Interface"), and Trans Multi Mechanics Co., Ltd. ("Trans Multi Mechanics");

b.    YUEH-HSUN TSAI, also known as "Gary Tsai" (hereafter "GARY TSAI"), was a legal permanent resident of the United States, residing in Glenview, Illinois; GARY TSAI conducted business on behalf of Trans Merits, Global Interface, and Trans Multi Mechanics in the United States and abroad; GARY TSAI is ALEX TSAI's son;

c.    Company LM was an Illinois corporation based in Lincolnshire, Illinois;

      d.     A Bryant Center Hole Grinder is a precision machine tool used to grind a center hole, with precisely smooth sides, between .050 inches and 2 inches in diameter;

      e.     Citibank and J.P. Morgan Chase Bank were U.S. based financial institutions with offices located throughout the United States, including in the Northern District of Illinois;

      f.     First Commercial Bank was a financial institution with offices located in Taiwan; and

      g.     On or about October 14, 2009, GARY TSAI established an account at J.P. Morgan Chase Bank, no. xxxxx9423, in the name of "Gary's Global Interface" (the "Global Interface Account").

    2.     At times material to this Indictment:

      a.     The International Emergency Economic Powers Act ("IEEPA"), Title 50, United States Code, Sections 1701-1707, authorized the President of the United States to impose economic sanctions in response to an unusual or extraordinary threat to the national security, foreign policy, or economy of the United States when the President declares a national emergency with respect to that threat;

      b.     On November 14, 1994, the President issued Executive Order 12938, finding "that the proliferation of nuclear, biological, and chemical weapons ('weapons of mass destruction') and of the means of delivering such weapons, constitutes an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States, and [declaring] a national emergency to deal with that threat."

      c.     On June 28, 2005, the President issued Executive Order 13382 ("Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters"), to target proliferators

2

of weapons of mass destruction ("WMD") and their support networks and deny designated WMD proliferators access to the U.S. financial and commercial systems. To implement that order, Executive Order 13382 authorized the United States Secretary of Treasury, in consultation with the Secretary of State, "to take such actions, including the promulgation of rules and regulations, as may be necessary to carry out the purposes" of the Executive Order. Pursuant to that authority, the Secretary of Treasury promulgated the "Weapons of Mass Destruction Proliferators Sanctions Regulations" (the "WMD Sanction Regulations"), 31 C.F.R. § 544.201 *et seq.*

d.  Among other things, Executive Order 13382 and the WMD Sanction Regulations:

(i)  authorized the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") to sanction individuals and entities facilitating the proliferation of WMDs by placing such individuals or entities on the List of Specially Designated Nationals and Blocked Persons (the "SDN List"); 31 C.F.R. § 544.201(a)(2);

(ii)  prohibited transactions or dealings, except as authorized or licensed by OFAC, by any U.S. person or within the United States with individuals and entities who have been placed on the SDN list, including: (a)"The making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person [on the SDN list]"; and (b) "The receipt of any contribution or provision of funds, goods, or services from any person [on the SDN list]"; 31 C.F.R. § 544.201(b); and

(iii)  prohibited any transaction by a U.S. person or within the United States that evades or avoids, has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth in Executive Order 13382 and the WMD Sanction Regulations, 31 C.F.R.

3

§ 544.205;

        e.      Pursuant to Executive Order 13382 and the WMD Sanction Regulations, a U.S. person could not provide financial, brokering, freight forwarding, transportation, or other services to a person or entity on the SDN list, except as authorized or licensed by OFAC; 31 C.F.R. § 544.405;

        f.      For purposes of Executive Order 13382 and the WMD Sanction Regulations, a "U.S. person" included a permanent resident alien, any person in the United States, and any entity organized under the laws of the United States or any jurisdiction within the United States; 31 C.F.R. § 544.312;

        g.      On or about January 16, 2009, OFAC designated ALEX TSAI, Trans Merits, and Global Interface pursuant to Executive Order 13382 as Specially Designated Nationals in connection with the proliferation of weapons of mass destruction.

        h.      At no time after those designations did ALEX TSAI, Trans Merits, or Global Interface apply for, receive, or possess a license or authorization from OFAC to engage in any transactions or dealings with a U.S. person or within the United States.

        i.      At no time after those designations did GARY TSAI apply for, receive, or possess a license or authorization from OFAC to engage in any transactions or dealings with a Specially Designated National.

        3.      Beginning no later than in or about August 2009 and continuing until in or about August 2010, in the Northern District of Illinois, and elsewhere,

        HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai," and
        YUEH-HSUN TSAI, also known as "Gary Tsai,"

4

defendants herein, knowingly conspired with each other, and with others known and unknown to the grand jury, to defraud the United States Department of the Treasury and the United States government by interfering with and obstructing a lawful government function, that is, the enforcement of Executive Order 13382 and the WMD Sanction Regulations, by deceit, craft, trickery, and dishonest means.

## MANNER AND MEANS OF THE CONSPIRACY

4.      It was part of the conspiracy that, after the OFAC designations, ALEX TSAI, GARY TSAI, and others continued to conduct business through the U.S. financial and commercial systems for the benefit of ALEX TSAI, Trans Merits, and Global Interface. In order to interfere and obstruct the U.S. government's efforts to block ALEX TSAI, Trans Merits, and Global Interface from accessing the U.S. financial and commercial systems, ALEX TSAI, GARY TSAI, and others concealed the involvement of ALEX TSAI, Trans Merits, and Global Interface in post-designation transactions by, among other things, using alias email accounts and front companies.

5.      It was further part of the conspiracy that ALEX TSAI, GARY TSAI, and others attempted to evade the ban and prohibitions imposed on ALEX TSAI, Trans Merits, and Global Interface after they were designated proliferators of weapons of mass destruction by exporting goods from the United States to Trans Multi Mechanics and concealing the involvement of ALEX TSAI in the export transactions.

6.      It was further part of the conspiracy that ALEX TSAI, GARY TSAI, and others attempted to evade the ban and prohibitions imposed on ALEX TSAI, Trans Merits, and Global Interface after they were designated proliferators of weapons of mass destruction by importing goods to the United States and concealing the involvement of ALEX TSAI and Trans Merits in those

5

import transactions.

7.     It was further part of the conspiracy that ALEX TSAI and GARY TSAI attempted to evade the ban and prohibitions imposed on ALEX TSAI, Trans Merits, and Global Interface after they were designated proliferators of weapons of mass destruction by transmitting money into the United States and through a U.S. financial institution in the name of a third-party and concealing the involvement of ALEX TSAI in the financial transactions.

8.     It was further part of the conspiracy that ALEX TSAI, GARY TSAI, and others communicated through various email accounts to conduct business in the United States.

9.     It was further part of the conspiracy that GARY TSAI at various times conducted business with ALEX TSAI, Trans Merits, and Global Interface using the name Factory Direct Machine Tools.

## OVERT ACTS

10.     In furtherance of this conspiracy, and to accomplish its objectives, defendants performed and caused to be performed the following overt acts, among others:

a.     On or about August 21, 2009, GARY TSAI sent an email to Company LM regarding the purchase of a Bryant Center Hole Grinder.

b.     On or about August 26, 2009, GARY TSAI visited Company LM to inspect the Bryant Center Hole Grinder.

c.     On or about August 31, 2009, GARY TSAI visited Company LM to inspect the Bryant Center Hole Grinder.

d.     On or about August 31, 2009, GARY TSAI sent an email to Company LM, instructing Company LM to prepare an invoice and bill of lading for the purchase of the Bryant

6

Center Hole Grinder, with the purchasing company being Trans Multi Mechanics.

       e.      On or about September 1, 2009, GARY TSAI sent an email to ALEX TSAI and Trans Merits, forwarding a copy of the commercial invoice for the Bryant Center Hole Grinder.

       f.      On or about September 1, 2009, GARY TSAI and ALEX TSAI caused an employee at Company LM to file a Shipper's Export Declaration with the U.S. government that falsely stated that the end user was "Trans Multi Mechanics" and that no license was required to export the Bryant Center Hole Grinder

       g.      On or about September 2, 2009, GARY TSAI sent an email to ALEX TSAI and Trans Merits, requesting that ALEX TSAI arrange payment for the Bryant Center Hole Grinder.

       h.      On or about September 2, 2009, ALEX TSAI and GARY TSAI caused $6,500.00 to be wire transferred from the Global Interface Account to a bank account maintained by Company LM for the purchase of the Bryant Center Hole Grinder.

       i.      On or about September 4, 2009, ALEX TSAI caused a wire transfer of $7,200.00 to be sent from Trans Multi Mechanic's bank account at First Commercial Bank to GARY TSAI's bank account at Citibank to pay for the Bryant Center Hole Grinder.

       j.      On or about September 23, 2009, ALEX TSAI, GARY TSAI, and others caused Company LM to export the Bryant Center Hole Grinder from the United States to Trans Multi Mechanics in Taiwan.

       k.      On or about October 21, 2009, ALEX TSAI caused a wire transfer in the amount of approximately $66,975.00 to be sent from an account in the name of Individual HHT at First Commercial Bank in Taipei, Taiwan, to GARY TSAI's Citibank account in the United States.

       l.      In or about December 2009, ALEX TSAI used a new email address to conduct

business.

m.      On or about January 6, 2010, GARY TSAI sent an email to ALEX TSAI and Individual DH regarding the potential importation of LED road lights into the United States.

n.      On or about January 28, 2010, ALEX TSAI caused an email to be sent to GARY TSAI, attaching a revised pricing list for the LED road lights.

o.      On or about February 1, 2010, ALEX TSAI caused a wire transfer in the amount of approximately $49,975.00 to be sent from an account in the name of Individual HHT at First Commercial Bank in Taipei, Taiwan, to GARY TSAI's Citibank account in the United States.

p.      On or about August 15, 2010, GARY TSAI sent an email to ALEX TSAI and Trans Merits, requesting assistance in procuring an oil pump for importation into the United States.

q.      Sometime on or before August 18, 2010, ALEX TSAI and Trans Merits procured an oil pump for GARY TSAI.

r.      On or about August 18, 2010, ALEX TSAI caused an email to be sent to GARY TSAI, informing GARY TSAI that the oil pump had been shipped to the United States.

s.      Sometime on or after August 18, 2010, ALEX TSAI and Trans Merits caused the importation of an oil pump into the United States;

In violation of Title 18, United States Code, Section 371.

## COUNT TWO

The SPECIAL SEPTEMBER 2012 GRAND JURY further charges:

1.     The allegations in Paragraphs 1 and 2 of Count One are incorporated and re-alleged as though fully stated herein.

2.     Beginning no later than in or about August 2009 and continuing until at least in or about August 2010, in the Northern District of Illinois and elsewhere,

HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai," and
YUEH-HSUN TSAI, also known as "Gary Tsai,"

defendants herein, knowingly and willfully conspired with each other and others, known and unknown to the grand jury, to: (a) evade and avoid the prohibitions and restrictions imposed by the Office of Foreign Assets Control, United States Department of Treasury, on HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai," and Trans Merits Co., Ltd., as proliferators of weapons of mass destruction; (b) make a contribution and provision of funds, goods, and services to and for the benefit of any individual and entity whose property and interests have been blocked as a proliferator of weapons of mass destruction by the Office of Foreign Assets Control, United States Department of Treasury, namely, HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai," and Trans Merits Co., Ltd.; and (c) receive a contribution and provision of funds, goods, and services from any individual and entity whose property and interests have been blocked as a proliferator of weapons of mass destruction by the Office of Foreign Assets Control, United States Department of Treasury, namely, HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai," and Trans Merits Co., Ltd.

9

<u>MANNER AND MEANS OF THE CONSPIRACY</u>

3.     The allegations in Paragraphs 4 through 9 of Count One are incorporated and re-alleged as though fully stated herein.

<u>OVERT ACTS</u>

4.     The allegations in Paragraph 10 of Count One are incorporated and re-alleged as though fully stated herein.

In violation of 50 U.S.C. §§ 1705(a) and (c), and Title 31, Code of Federal Regulations, Parts 544.201 and 544.205.

10

## COUNT THREE

The SPECIAL SEPTEMBER 2012 GRAND JURY further charges:

1.      The allegations in Paragraphs 1 and 2 of Count One are incorporated and re-alleged as though fully stated herein.

2.      Beginning in or about August 2009 and continuing until in or about September 2009, in the Northern District of Illinois, Eastern Division, and elsewhere,

HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai," and
YUEH-HSUN TSAI, also known as "Gary Tsai,"

defendants herein, knowingly and willfully engaged in a transaction that evaded and avoided, and had the purpose of evading and avoiding, prohibitions and restrictions imposed by the Office of Foreign Assets Control, United States Department of Treasury, on HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai," and Trans Merits Co., Ltd., as proliferators of weapons of mass destruction, namely, the exportation of a Bryant Center Hole Grinder from the United States to Taiwan;

In violation of Title 50, United States Code, Section 1705(a) and (c), and Title 31, Code of Federal Regulations, Parts 544.201 and 544.205.

11

## COUNT FOUR

The SPECIAL SEPTEMBER 2012 GRAND JURY further charges:

1.      The allegations in Paragraphs 1 and 2 of Count One are incorporated and re-alleged as though fully stated herein.

2.      Beginning in or about August 2009 and continuing until in or about September 2009, in the Northern District of Illinois, Eastern Division, and elsewhere,

HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai," and
YUEH-HSUN TSAI, also known as "Gary Tsai,"

defendants herein, knowingly and willfully made and caused to be made a contribution and provision of funds, goods, and services, specifically a Bryant Center Hole Grinder, to and for the benefit of any individual and entity whose property and interests in property have been blocked as a proliferator of weapons of mass destruction by the Office of Foreign Assets Control, United States Department of Treasury, namely, HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai," and Trans Merits Co., Ltd.;

In violation of Title 50, United States Code, Section 1705(a) and (c); Title 31, Code of Federal Regulations, Parts 544.201; and Title 18, United States Code, Section 2.

12

## COUNT FIVE

The SPECIAL SEPTEMBER 2012 GRAND JURY further charges:

1.     The allegations in Paragraphs 1 and 2 of Count One are incorporated and re-alleged as though fully stated herein.

2.     On or about October 21, 2009, in the Northern District of Illinois, Eastern Division, and elsewhere,

HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai," and
YUEH-HSUN TSAI, also known as "Gary Tsai,"

defendants herein, knowingly and willfully engaged in a transaction that evaded and avoided, and had the purpose of evading and avoiding, prohibitions and restrictions imposed by the Office of Foreign Assets Control, United States Department of Treasury, on HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai,", as a proliferator of weapons of mass destruction, namely, the wire transfer of approximately $66,975.00 from an account at First Commercial Bank in Taiwan to an account at Citibank in the United States;

In violation of Title 50, United States Code, Section 1705(a) and (c), and Title 31, Code of Federal Regulations, Parts 544.201 and 544.205.

## COUNT SIX

The SPECIAL SEPTEMBER 2012 GRAND JURY further charges:

1.      The allegations in Paragraphs 1 and 2 of Count One are incorporated and re-alleged as though fully stated herein.

2.      On or about October 21, 2009, in the Northern District of Illinois, Eastern Division, and elsewhere,

> HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai," and
> YUEH-HSUN TSAI, also known as "Gary Tsai,"

defendants herein, knowingly and willfully received and caused to be received a contribution and provision of funds, goods, and services, namely, approximately $66,975.00, from any individual or entity whose property and interests in property have been blocked as a proliferator of weapons of mass destruction by the Office of Foreign Assets Control, United States Department of Treasury, namely, HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai";

In violation of Title 50, United States Code, Section 1705(a) and (c); Title 31, Code of Federal Regulations, Parts 544.201; and Title 18, United States Code, Section 2.

14

## COUNT SEVEN

The SPECIAL SEPTEMBER 2012 GRAND JURY further charges:

1.      The allegations in Paragraphs 1 and 2 of Count One are incorporated and re-alleged as though fully stated herein.

2.      On or about February 1, 2010, in the Northern District of Illinois, Eastern Division, and elsewhere,

HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai," and
YUEH-HSUN TSAI, also known as "Gary Tsai,"

defendants herein, knowingly and willfully engaged in a transaction that evaded and avoided, and had the purpose of evading and avoiding, prohibitions and restrictions imposed by the Office of Foreign Assets Control, United States Department of Treasury, on HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai,", as a proliferator of weapons of mass destruction, namely, the wire transfer of approximately $49,975.00 from an account at First Commercial Bank in Taiwan to an account at Citibank in the United States;

In violation of Title 50, United States Code, Section 1705(a) and (c), and Title 31, Code of Federal Regulations, Parts 544.201 and 544.205.

15

## COUNT EIGHT

The SPECIAL SEPTEMBER 2012 GRAND JURY further charges:

1.     The allegations in Paragraphs 1 and 2 of Count One are incorporated and re-alleged as though fully stated herein.

2.     On or about February 1, 2010, in the Northern District of Illinois, Eastern Division, and elsewhere,

HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai," and
YUEH-HSUN TSAI, also known as "Gary Tsai,"

defendants herein, knowingly and willfully received and caused to be received a contribution and provision of funds, goods, and services, namely, approximately $49,975.00, from any individual or entity whose property and interests in property have been blocked as a proliferator of weapons of mass destruction by the Office of Foreign Assets Control, United States Department of Treasury, namely HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai";

In violation of Title 50, United States Code, Section 1705(a) and (c); Title 31, Code of Federal Regulations, Parts 544.201; and Title 18, United States Code, Section 2.

16

## **COUNT NINE**

The SPECIAL SEPTEMBER 2012 GRAND JURY further charges:

1.      The allegations in Paragraphs 1 and 2 of Count One are incorporated and re-alleged as though fully stated herein.

2.      In or about September 2009, in the Northern District of Illinois and elsewhere,

HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai," and
YUEH-HSUN TSAI, also known as "Gary Tsai,"

defendants herein, knowingly conspired with each other, and with others, known and unknown, to commit an offense against the United States in violation of Title 18, United States Code, Section 1956, specifically, to transmit and transfer funds, namely, approximately $7,200.00, from a place outside the United States, namely,Taiwan, to a place in the United States, with the intent to promote the carrying on of specified unlawful activity, namely, the offenses charged in Counts Three and Four of this Indictment, in violation of Title 18, United States Code, Sections 1956(a)(2)(A);

All in violation of Title 18, United States Code, Sections 1956(h).

17

## COUNT TEN

The SPECIAL SEPTEMBER 2012 GRAND JURY further charges:

1.      The allegations in Paragraphs 1 and 2 of Count One are incorporated and re-alleged as though fully stated herein.

2.      On or about September 4, 2009, in the Northern District of Illinois and elsewhere,

> HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai," and
> YUEH-HSUN TSAI, also known as "Gary Tsai,"

defendants herein, knowingly and willfully transmitted and transferred funds, namely, approximately $7,200.00, from a place outside the United States, namely, Taiwan, to a place in the United States, with the intent to promote the carrying on of specified unlawful activity, namely, the offenses charged in Counts Three and Four of this Indictment;

In violation of Title 18, United States Code, Sections 1956(a)(2)(A).

18

## FORFEITURE ALLEGATION ONE

1.      The allegations contained in Counts One through Eight of this Indictment are hereby

realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18,

United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United

States Code, Section 2461(c), upon conviction of any of the offenses alleged in Counts One through

Eight of this Indictment,

> HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai," and
> YUEH-HSUN TSAI, also known as "Gary Tsai,"

defendants herein, shall forfeit to the United States of America any property, real or personal, which

constitutes or is derived from proceeds traceable to said violations. The property to be forfeited

includes, but is not limited to, the following: $124,150.00.

3.      If any of the property described above, as a result of any act or omission of the

defendants:

>       a.      cannot be located upon the exercise of due diligence;
>
>       b.      has been transferred or sold to, or deposited with, a third party;
>
>       c.      has been placed beyond the jurisdiction of the court;
>
>       d.      has been substantially diminished in value; or
>
>       e.      has been commingled with other property which cannot be divided without

difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to

Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code,

Section 2461(c).

## FORFEITURE ALLEGATION TWO

1.     The allegations contained in Counts Nine and Ten of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(1).

2.     Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1956,

HSIEN TAI TSAI, also known as "Hsein Tai Tsai" and "Alex Tsai," and
YUEH-HSUN TSAI, also known as "Gary Tsai,"

defendants herein, shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following: $7,200.00.

3.     If any of the property described above, as a result of any act or omission of the defendants:

   a.     cannot be located upon the exercise of due diligence;

   b.     has been transferred or sold to, or deposited with, a third party;

   c.     has been placed beyond the jurisdiction of the court;

   d.     has been substantially diminished in value; or

   e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____
FOREPERSON


_____
UNITED STATES ATTORNEY

21

# Exhibit B

AUSA Patrick C. Pope 353-1980

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

A TRUE COPY-ATTEST
THOMAS G. BRUTON, CLERK

BY _____
DEPUTY CLERK
U.S. DISTRICT COURT, NORTHERN
DISTRICT OF ILLINOIS
DATE 6/12/13

UNITED STATES OF AMERICA

v.

HSIEN TAI TSAI
      also known as "Alex Tsai"

**WARRANT FOR ARREST**

CASE NUMBER:

**UNDER SEAL**

12 CR 829

MAGISTRATE JUDGE BROWN

To:   The United States Marshal and Any Authorized Officer

      YOU ARE HEREBY COMMANDED to arrest HSIEN TAI TSAI, also known as "Alex Tsai,"

defendant herein, and bring him forthwith to the nearest Magistrate Judge to answer a[n]

☐ Indictment    ☐ Information    ☒ Complaint

charging him with:

1.    Conspiring to defraud the United States Department of the Treasury and the United States government by interfering with and obstructing a lawful government function, that is, the enforcement of laws and regulations prohibiting the proliferation of weapons of mass destruction by deceit, craft, trickery, and dishonest means, in violation of 18 U.S.C. § 371.

2.    Conspiring to evade and avoid the prohibitions and restrictions imposed by the Office of Foreign Asset Controls, United States Department of Treasury, on HSIEN TAI TSAI and his companies, Trans Merits Co., Ltd., and Global Interface Company, Inc., as proliferators of weapons of mass destruction, in violation of 50 U.S.C. §§ 1705(a) and (c), and 31 C.F.R. §§ 544.201 and 544.205.

3.    Conspiring to commit an offense against the United States in violation of Title 18, United States Code, Section 1956, specifically, to transmit and transfer funds, namely, approximately $7200, from a place outside the United States, namely the Republic of China (Taiwan), to a place in the United States, with the intent to promote the carrying on of specified unlawful activity, namely, the offense charged in Count Two of the complaint; all in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and (h).

GERALDINE SOAT BROWN
Name of Issuing Officer

*Geraldine Soat Brown*
Signature of Issuing Officer

Bail fixed at $ _____

U.S. MAGISTRATE JUDGE        Title of
Issuing Officer

October 23, 2012; Chicago, Illinois
Date and Location

by   GERALDINE SOAT BROWN
     Name of Judicial Officer

# Exhibit C

**Exhibit C**

18 U.S. C. § 371.
Conspiracy to Defraud the U.S. Government

>   If two or more persons conspire to either commit any offense against the
>   United States, or to defraud the United States, or any agency thereof in
>   any manner or for any purpose, and one or more of such persons do any
>   act to effect the object of the conspiracy, each shall be fined under this
>   title or imprisoned not more than five years, or both.

50 U.S.C. §§ 1705 (a) and (c).
Conspiracy to Violate the International Emergency Economic Powers Act
and Regulations Promulgated Thereunder[1]

>   a) Unlawful acts
>
>   It shall be unlawful for a person to violate, attempt to violate, conspire to violate,
>   or cause a violation of any license, order, regulation, or prohibition issued under
>   this chapter.
>
>   (c) Criminal penalty
>
>   A person who willfully commits, willfully attempts to commit, or willfully
>   conspires to commit, or aids or abets in the commission of, an unlawful act
>   described in subsection (a) shall, upon conviction, be fined not more than
>   $1,000,000, or if a natural person, may be imprisoned for not more than 20 years,
>   or both.

31 C.F.R. § 544.201
Prohibited transactions involving blocked property.

>   (a) Except as authorized by regulations, orders, directives, rulings, instructions, licenses
>   or otherwise ... all property and interests in property that are in the United States, that
>   hereafter come within the United States, or that are or hereafter come within the
>   possession or control of U.S. persons, including their overseas branches, of the following

---

[1] The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1707,
authorizes the President to impose economic sanctions ... in response to an unusual or
extraordinary threat to the national security, foreign policy, or economy of the United States
when the President declares a national emergency with respect to that threat.

persons are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in: ... (2) Any foreign person determined by the Secretary of State, in consultation with the Secretary of the Treasury, the Attorney General, and other relevant agencies, to have engaged, or attempted to engage, in activities or transactions that have materially contributed to, or pose a risk of materially contributing to, the proliferation of weapons of mass destruction or their means of delivery (including missiles capable of delivering such weapons), including any efforts to manufacture, acquire, possess, develop, transport, transfer or use such items, by any person or foreign country of proliferation concern; (3) Any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, the Attorney General, and other relevant agencies, to have provided, or attempted to provide, financial, material, technological or other support for, or goods or services in support of, any activity or transaction described in paragraph (a)(2) of this section, or any person whose property and interests in property are blocked pursuant to this section; and (4) Any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, the Attorney General, and other relevant agencies, to be owned or controlled by, or acting or purporting to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to this section.

* * * * *

(b) The prohibitions in paragraph (a) of this section include, but are not limited to, prohibitions on the following transactions when engaged in by a United States person or within the United States: (1) The making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to paragraph (a) of this section; and (2) The receipt of any contribution or provision of funds, goods, or services from any person whose property and interests in property are blocked pursuant to paragraph (a) of this section.

31 C.F.R. § 544.205
Evasions; attempts; conspiracies.

(a) Except as otherwise authorized, and notwithstanding any contract entered into or any license or permit granted prior to the effective date, any transaction by a U.S. person or within the United States on or after the effective date that evades or avoids, has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth in this part is prohibited.

(b) Except as otherwise authorized, and notwithstanding any contract entered into or any license or permit granted prior to the effective date, any conspiracy formed to violate the prohibitions set forth in this part is prohibited.

## 18 U.S. C. §1956(a)(2)(A) and (h).
Money Laundering

(a)(2)   Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States--

(A)      with the intent to promote the carrying on of specified unlawful activity . . .

shall be sentenced to a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer whichever is greater, or imprisonment for not more than twenty years, or both. . . .

(h)  Any person who conspires to commit any offense defined in this section or sections 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

## 18 U.S.C. § 2
Principals

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

## 18 U.S.C. § 3282
Statute of Limitations

(a) Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

# Exhibit D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)
v. ) No. 12 CR 829
)
HSIEN TAI TSAI, )
    also known as "Hsein Tai Tsai" )
    also known as "Alex Tsai" )
)
    and )
)
YUEH-HSUN TSAI, )
    also known as "Gary Tsai" )

### AFFIDAVIT OF FBI SPECIAL AGENT IN SUPPORT OF EXTRADITION

I, Joseph Hugdahl, being duly sworn, depose and state as follows:

1.    I am a citizen of the United States. I am currently employed as a Special Agent with the United States Federal Bureau of Investigation ("FBI") and have been so employed since 2010. I am currently assigned to the Chicago Field Office, where I am assigned to a counter-intelligence squad in the Chicago Field Office, where my responsibilities include investigating the illegal transfer of goods, utilities, and services regulated by the United States Departments of State, Commerce, and Treasury.

2.    This affidavit is submitted in support of a request by the United States for the extradition of Hsien Tai Tsai, also known as "Hsein Tai Tsai" and "Alex Tsai" (hereinafter "ALEX TSAI"), for the purpose of prosecuting him on the charges contained in indictment 12 CR 829 (the "Indictment"). Because this affidavit is submitted for that limited purpose, I have not included every fact known to me and other law enforcement officers regarding ALEX TSAIU or the charged offenses. ALEX TSAI was provisionally arrested in Estonia for purposes

of extradition to the United States on May 1, 2013. I am one of the lead FBI agents assigned to the investigation of ALEX TSAI in connection with the charges contained in the Indictment.

A.    The Investigation

3.    Since in or about 2009, the United States government has been investigating a network of individuals and companies that are engaged in the export of United States origin goods and machinery that could be used to produce weapons of mass destruction. Subjects of the investigation include: ALEX TSAI; Yueh-Hsun Tsai, also known as "Gary Tsai" (hereinafter "Gary Tsai"); and Individual A. ALEX TSAI is currently in custody in Estonia, but otherwise is believed to reside in Taiwan; Gary Tsai was born in Taiwan, maintains a Taiwanese passport, and is a permanent resident alien of the United States living in Glenview, Illinois; and Individual A is believed to be a resident of Taiwan.

4.    ALEX TSAI, Gary Tsai, and Individual A are associated with at least three companies based in Taiwan – Trans Merits Co., Ltd. ("Trans Merits"), Trans Multi Mechanics Co., Ltd. ("Trans Multi Mechanics"), and Global Interface Company, Inc. ("Global Interface") – that have purchased and then exported, and attempted to purchase and then export, from the United States machinery used to fabricate metals and other materials with a high degree of precision, as further described below.

5.    In or about June 2008, ALEX TSAI and Trans Merits were indicted in Taiwan for illegally forging invoices and shipping restricted materials to North Korea. Later that year, ALEX TSAI and Trans Merits were convicted and sentenced.

6.    On 16 January 2009, the United States government banned United States citizens, United States permanent resident aliens, United States companies, and persons in the United

2

States from engaging in business with ALEX TSAI, Trans Merits, or Global Interface. The ban was based on the fact that the United States government designated ALEX TSAI, Trans Merits, and Global Interface proliferators of weapons of mass destruction. According to the U.S. Department of Treasury and announced in a press release dated 16 January 2009, ALEX TSAI was designated for providing, or attempting to provide, financial, technological, or other support for, or goods or services in support of the Korea Mining Development Trading Corporation ("KOMID"). In the press release, the Treasury Department further asserted that ALEX TSAI "has been supplying goods with weapons production capabilities to KOMID and its subordinates since the late 1990s, and he has been involved in shipping items to North Korea that could be used to support North Korea's advanced weapons program."

7.     The ban prohibits ALEX TSAI, Trans Merits, and Global Interface, or anyone acting on their behalf, from among other things: (a) exporting goods from the United States without first obtaining a license or authorization from the United States Department of Treasury, Office of Foreign Assets Control (hereinafter "OFAC"), (b) importing goods into the United States without first obtaining a license or authorization from OFAC; and (c) transmitting money to the United States, or through a financial institution based in the United States, without first obtaining a license or authorization from OFAC.

8.     ALEX TSAI, Trans Merits, and Global Interface never applied for any such licenses or authorization. Instead ALEX TSAI conspired with Gary Tsai and others to hide his involvement and/or Trans Merits' involvement in each of those activities. By concealing ALEX TSAI's and Trans Merits' involvement in those transactions, ALEX TSAI, Gary Tsai, and others

defrauded the U.S. government and deprived the U.S. government of its ability to regulate commerce and implement foreign policy.

9.    For example, beginning no later than August 2009 – approximately 8 months after the OFAC designation – ALEX TSAI, Gary Tsai, Individual A, and others began using Trans Multi Mechanics to purchase and export machinery on behalf of Trans Merits and/or ALEX TSAI. Specifically, ALEX TSAI, Gary Tsai, and Individual A conspired to export from the United States a Bryant Center Hole Grinder.

10.    ALEX TSAI and Gary Tsai also conspired to evade the ban and licensing requirements by fraudulently importing and attempting to import goods into the United States without disclosing the involvement of ALEX TSAI and Trans Merits. ALEX TSAI and Gary Tsai hid the involvement of ALEX TSAI and Trans Merits from the U.S. government and U.S. companies by conducting business under a new company name – Factory Direct Machine Tools – and using a new email address to communicate about business. Had the U.S. government been informed that ALEX TSAI and Trans Merits were involved in the transactions, it would have prevented the items from being imported into the United States.

11.    ALEX TSAI and Gary Tsai also conspired to evade the ban and licensing requirements by fraudulently transmitting money into the United States without disclosing that ALEX TSAI was the source of the funds transmitted into the United States. To hide his involvement, ALEX TSAI, using a Taiwanese bank account in his daughter's name (Hui Hsien Tsai), which he controlled, deposited over $116,950.00 into that account, and then wire transferred those monies to Gary Tsai in the United States. Had the U.S. government been

4

informed that ALEX TSAI was involved in those transactions, the transfers could have been blocked.

12.     To regulate exports from the United States, the U.S. government relies on disclosures from individuals and companies. For example, exporters, shippers, and freight forwarders are required to file certain forms and declarations concerning goods being exported from the United States. Typically, those documents are filed electronically through the Automated Export System ("AES"), which is administered by the U.S. Department of Homeland Security ("DHS"). A Shipper's Export Declaration ("SED") is an official document submitted to DHS in connection with export shipments from the United States.

13.     An essential and material part of a SED, as well as other export filings, is information concerning the end-user or ultimate destination of the export. The identity of the end-user may determine: (a) whether the goods may be exported without any specific license or authorization from the U.S. government; (b) whether the goods may be exported only with the specific authorization or license from the U.S. government; or (c) whether the goods may not be exported from the United States. If an individual or company provides false information on an SED, the U.S. government may not be able to control what items are shipped through its borders.

B.     The Email Accounts

14.     As part of this investigation, the United States obtained search warrants in connection with a number of email accounts associated with ALEX TSAI and Gary Tsai. The government also obtained search warrants for email accounts held by third parties. Each of the search warrants was issued by a United States Magistrate Judge for the United States District Court for the Northern District of Illinois.

15. A number of the emails obtained through the search warrants were written in Chinese and have been translated into English by government linguists. Translations set forth in this affidavit are preliminary in nature and are not intended to be final translations.

16. Throughout this affidavit, I have set forth the substance of a number of email communications involving ALEX TSAI, Gary Tsai, and other parties. Unless otherwise noted, the emails so referenced were obtained by the government through one of the above-described search warrants. In addition, when the substance of an email appears in quotes, the emails have been quoted verbatim.

17. Based on my review of the materials obtained from the email search warrants, I have identified a number of email addresses that ALEX TSAI used to communicate with Gary Tsai about business, including: trans.merits@msa.hinet.net and dragon.inco@gmail.com.

18. Based on my review of the materials obtained from the email search warrants, I have determined that Gary Tsai communicated with ALEX TSAI and Individual A about business through emails Gary Tsai sent to, and received from, tmm.news@msa.hinet.net. I have also determined that this is the email address associated with Trans Multi Mechanics.

C. The Illegal Export From the United States

19. In August and September 2009, ALEX TSAI, Gary Tsai, and others conspired to evade the ban and licensing requirements by exporting a Bryant Center Hole Grinder ("Hole Grinder") from the United States on behalf of ALEX TSAI and Trans Merits.

20. The Hole Grinder is a precision machine tool used to grind a center hole, with precisely smooth sides, in a material. According to industry materials, the Hole Grinder is capable of grinding holes between .050 inches and 2 inches in diameter.

21.     To obtain the Hole Grinder, Gary Tsai made false statements to a U.S. company about the end user of the item.  Specifically, Gary Tsai, after consulting with ALEX TSAI, did not disclose that the transaction involved ALEX TSAI.  Instead, Gary Tsai represented that the transaction was on behalf of Trans Multi Mechanics.  Those false statements caused the U.S. company to make misrepresentations on a form filed with the U.S. government.  Had ALEX TSAI and Gary Tsai not concealed material facts about the transaction, the U.S. government would have prevented the U.S. company from exporting the Hole Grinder.

22.     On or about 17 August 2009, Individual A, representing that he worked for Trans Multi Mechanics, emailed a company in Illinois ("Company LM") for a price quote on a Hole Grinder.  That same day, an employee of Company LM responded to the co-conspirator, quoting a price of $9,500.

23.     On or about 21 August 2009, Gary Tsai sent emails to Company LM identifying himself as working for Trans Multi Mechanics and stating that Trans Multi Mechanics could not pay more than $6,500 for the Hole Grinder.

24.     On or about 26 August 2009, Company LM emailed Gary Tsai and accepted the $6,500 offer.

25.     On or about 31 August 2009, Gary Tsai sent an email to Company LM stating that the Hole Grinder was to be exported to Trans Multi Mechanics in Taiwan.

26.     On or about 1 September 2009, Company LM sold the Hole Grinder to Gary Tsai and Trans Multi Mechanics.  The sale invoice was addressed to Trans Multi Mechanics in Taiwan.

7

27. On or about 1 September 2009, Gary Tsai forwarded a copy of the invoice to Trans Merits and stated: "here is the commercial invoice, the packing list will come later."

28. On or about 1 September 2009, based on the false information provided by Gary Tsai, on behalf of ALEX TSAI, an employee at Company LM filed an SED with the U.S. government that falsely stated that the end user was "Trans Multi Mechanics" and that no license was required to export the Hole Grinder.

29. On or about 2 September 2009, Gary Tsai sent an email to ALEX TSAI at Trans Merits, asking that ALEX TSAI make payment arrangements for the Hole Grinder.

30. On or about 4 September 2009, Trans Merits wire transferred $7,200 from Trans Multi Mechanics' bank account in Taiwan to Gary Tsai's bank account in the United States. In the United States, transferring money from a foreign location to the United States for the purpose of violating U.S. export laws is considered money laundering. Accordingly, it was illegal for Gary Tsai and ALEX TSAI to conspire to transfer money from Trans Multi Mechanics in Taiwan to Gary Tsai in the United States to export the Hole Grinder to ALEX TSAI and Trans Merits in Taiwan.

31. On or about 9 September 2009, an employee of Company LM sent an email to Gary Tsai, attaching copies of the packing list, invoice, SED, and certificate of origin for the Hole Grinder.

32. On or about 23 September 2009, Company LM exported the Hole Grinder to Trans Multi Mechanics in Taiwan.

D.    ALEX TSAI's Post Arrest Statement Regarding the Illegal Export

33.    On or about 1 May 2013, ALEX TSAI was arrested upon his arrival in Tallinn, Estonia, at the request of the United States and pursuant to Article 11 of the 2006 U.S.-Estonia Extradition Treaty.

34.    Subsequent to ALEX TSAI's arrest in Estonia, I participated in interviews with ALEX TSAI. The interviews took place in Estonia on 1, 6-9 May 2013. At the interviews, ALEX TSAI was advised of his rights under the United States Constitution. ALEX TSAI agreed in writing to waive those rights and to speak to me and another FBI Language Specialist. In addition, on 8-9 May 2013, ALEX TSAI agreed to speak with me and the FBI Language Specialist with his attorney present.

35.    During those interviews, ALEX TSAI stated, in substance and in part, that: (1) he and Trans Merits were involved in the September 23, 2009 export of the Hole Grinder; (2) he knew that he and Trans Merits were prohibited from conducting business in the United States or with a United States person; and (3) as a result, ALEX TSAI decided to export the Hole Grinder to Trans Multi Mechanics rather than Trans Merits.

E.    Illegal Import of Various Goods to the United States

36.    ALEX TSAI and Gary Tsai also conspired to evade the ban and licensing requirements by fraudulently importing and attempting to import items into the United States without disclosing the involvement of ALEX TSAI and Trans Merits. ALEX TSAI and Gary Tsai hid the involvement of ALEX TSAI and Trans Merits from the U.S. government and U.S. companies by conducting business under a new company name – Factory Direct Machine Tools – and using a new email address. Had the U.S. government been informed that ALEX TSAI and

9

Trans Merits were involved in these transactions, it would have prevented the items from being imported into the United States.

### 1. The New Company

37.     On or about 12 August 2009, Gary Tsai sent an email to Trans Merits with the subject "company name." The email stated: "Please print and give to Mr. Tsai – See which one he likes ..." Gary Tsai then listed 5 proposed company names. In September 2009, Gary Tsai started using the name Factory Direct Machine Tools to export tools from and import tools to the United States. In December 2009, ALEX TSAI began using a new email address. Previously, ALEX TSAI had used an email address that included the name Trans Merits.

### 2. The LED Lights

38.     Between December 2009 and March 2010, ALEX TSAI and Gary Tsai attempted to defraud the United States government and evade U.S. export law by attempting to import LED traffic lights into the United States with the assistance of ALEX TSAI and Trans Merits.

39.     On or about 6 January 2010, Gary Tsai sent an email to his potential customer and copied the email to Trans Merits, stating: "I am going to put your products on the Internet. There are a few things that I need your help ..." The email then lists a series of requests regarding the LED lights and ends with: "If there are other questions regarding price and sample, my father will discuss with you further."

40.     On or about 7 January 2010, Gary Tsai sent an email to ALEX TSAI stating "This the price of the lamp ... discuss pricing in the U.S."

41.     On or about 27 January 2010, Gary Tsai sent an email to Trans Merits stating: "Please print and give to Mr. Tsai." Attached to the email was a pricing list for LED lights.

42. On or about 29 January 2010, Trans Merits sent an email to Gary Tsai stating: "The parts in red are the prices filled out by Mr. Tsai, please read."

### 3. *The Oil Pump*

43. In August 2010, ALEX TSAI and Gary Tsai defrauded the U.S. government by illegally importing an oil pump into the United States. ALEX TSAI and Gary Tsai were able to circumvent the ban by failing to disclose to the U.S. government that ALEX TSAI and Trans Merits were involved in the transactions.

44. In early August 2010, an individual from a company in Massachusetts ordered an oil pump from Factory Direct Machine Tools.

45. On or about 15 August 2010, Gary Tsai emailed Trans Merits to order the oil pump: "I need an oil pump, could you help me buy one? Below is the company information ....".

46. On or about 18 August 2010, an employee at Trans Merits emailed Gary Tsai stating: "I am sending the oil pump to the U.S. today. Attached is a picture for you to see."

47. In his post-arrest statement, ALEX TSAI admitted that he caused Trans Merits to procure the oil pump for Gary Tsai and caused the oil pump to be shipped to the United States for Gary Tsai.

### F. Illegal Transfer of Money into the United States

48. ALEX TSAI and Gary Tsai also conspired to evade the ban and licensing requirements by fraudulently transmitting money into the United States without disclosing that ALEX TSAI was the source of the funds transmitted into the United States. To hide his involvement, ALEX TSAI used a Taiwanese bank account in his daughter's name (Hui Hsien Tsai), which he controlled, to deposit over $116,950.00 into that account and then wire

11

transferred those monies to Gary Tsai in the United States in two transactions. Because the source of the funds in each case was falsely described as Hui Hsien Tsai, the United States government did not recognize the transfers to be in violation of the law. Had the U.S. government been informed that ALEX TSAI was involved in those transactions, the transfers could have been blocked.

49.　Specifically, ALEX TSAI transferred approximately $116,950.00 in two transactions to Gary Tsai through the account in his daughter's name:

　　　a.　According to information obtained from Citibank, on or about 21 October 2009, Gary Tsai received a wire transfer in the amount of $66,975.00 from Hui Hsien Tsai at First Commercial Bank in Taipei, Taiwan. According to ALEX TSAI, he provided the funds for that transaction and caused the money to be wire transferred to Gary Tsai's bank account.

　　　b.　According to information obtained from Citibank, on or about 01 February 2010, Gary Tsai received a wire transfer in the amount of $49,975.00 from the account of Hui Hsien Tsai at First Commercial Bank in Taipei, Taiwan. According to ALEX TSAI, he provided the funds for that transaction and caused the money to be wired transferred to Gary Tsai's bank account.

50.　In his post-arrest statement, ALEX TSAI admitted that he controlled the account in his daughter's name, admitted sending the above-described wire transfers to Gary Tsai in the United States, and admitted the he (ALEX TSAI) provided the funds for those wire transfers.

G.    Identity of ALEX TSAI

51.    ALEX TSAI, a male, is a resident of Taiwan.  His Taiwanese passport number is 301335314 and/or 131134049.  ALEX TSAI's date of birth is 8 August 1945.  His is believed to stand 5 feet, 6 inches (1.67 meters) tall and is approximately 175 pounds (80 kilograms).  ALEX TSAI has black hair and brown eyes. I have seen ALEX TSAI in person and know that ALEX TSAI is the person in the photograph that is attached as Exhibit D to this extradition application.


_____
JOSEPH HUGDAHL
Special Agent
Federal Bureau of Investigation



Signed and sworn to before me
this 14 day of June 2013

_____
CHARLES NORGLE
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF ILLINOIS

# Exhibit E

